[ECF No. 92]

# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

SHIMON SHENKER,

    Plaintiff,

v.

TOWNSHIP OF LAKEWOOD, et al.

    Defendants.

Civil No. 24-3131 (ESK/EAP)

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Chaim Jurkanski's[1] Motion to Vacate Default, ECF. No. 92 ("Def.'s Br."). Plaintiff has opposed the Motion, ECF No. 102 ("Pl.'s Br."), and Defendant Jurkanski has submitted a reply brief in support, ECF No. 117 ("Def.'s Reply"). The Court has reviewed the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil rule 78.1. For the reasons set forth below and for good cause shown, the Motion is **GRANTED**.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.  Procedural History

On March 15, 2024, Plaintiff filed a Complaint against Defendants Township of Lakewood, Officer Joshua Gianoulis, Officer Kevin C. Martin, Police Officer Does 1-10, Monmouth Medical Center Southern Campus f/k/a Kimball Medical Center, Inc., Cooperman Barnabas Medical Center f/k/a Saint Barnabas Medical Center, County of Ocean, and the Office of the Prosecutor of the County of Ocean. ECF No. 1, Complaint ("Compl."). The Complaint

---

[1] Defendant's last name is spelled "Yorkshanksy" on the docket. The Court will use the correct spelling of Defendant's name, as set forth in his briefing.

alleged that Defendants wrongfully seized and imprisoned him, confiscated his firearms, and subjected him to unwanted medical treatment under the incorrect notion that he was suicidal. ECF No. 1, Compl. ¶¶ 1-2. Jurkanski was not a named Defendant in that Complaint. *Id.*

Thereafter, on May 30, 2024, Plaintiff filed his First Amended Complaint against the same Defendants, with the addition of Defendants Rechelle Zeiger and Chaim Jurkanski. *See* ECF No. 33, First Amended Complaint ("First Am. Compl."). Jurkanski was personally served at his home in Lakewood, New Jersey on July 16, 2024. *See* ECF No. 54, Proof of Service. Jurkanski's answer was due on August 6, 2025. *Id.*

On July 20, 2024, before the time expired for Jurkanski's answer, Plaintiff filed a Second Amended Complaint against all Defendants. *See* ECF No. 51, Sec. Am. Compl. On September 6, 2024, one month following Jurkanski's failure to file a timely answer, Plaintiff obtained a Clerk's Entry of Default against him. *See* ECF No. 73, Entry of Default.

On October 10, 2024, Jurkanski filed the current Motion to Vacate Default. *See* ECF No. 92. This matter is now ripe for disposition.

   **B.**   **Facts Against Jurkanski in the Second Amended Complaint**

The Second Amended Complaint alleges that Plaintiff and Defendant Rechelle Zeiger were in a romantic relationship and have seven children together. ECF No. 51, Sec. Am. Compl. ¶¶ 31-32. On September 17, 2022, Plaintiff informed Zeiger that he wanted a separation, after which he drove to the Manasquan Reservoir Park "to reflect on his relationship with Zeiger and how he would proceed in dissolving the relationship and taking care of his children." *Id.* ¶¶ 33-34. While there, three officers approached him with guns drawn, advising Plaintiff that they had received a 911 call from Zeiger claiming that Plaintiff was suicidal. *Id.* ¶¶ 35-37. When the Manasquan

Police determined that Plaintiff "'was not suicidal,'" Plaintiff was allowed to leave and return to his home.  *Id.* ¶ 43.

According to the Second Amended Complaint, Defendant Jurkanski is a "religious enforcer" in the Orthodox Jewish community in Lakewood and is "'hugely influential.'"  *Id.* ¶¶ 50-51.  Plaintiff alleges that, at some point in the evening of September 17, 2022, Jurkanski told police that Plaintiff "'was distraught over marital problems and he was going to jump off a bridge and kill himself.'"  *Id.* ¶ 47.  Plaintiff asserts that Zeiger and Jurkanski "planned together to falsely report that Plaintiff was suicidal in order to harm Plaintiff and to gain leverage against him in a forthcoming marital or custody battle."  *Id.* ¶ 53.  Ultimately, according to the Second Amended Complaint, Defendant Police Officer Kevin C. Martin decided to have Plaintiff involuntarily committed for psychiatric screening based on the accounts of Jurkanski, Zeiger, and Plaintiff's daughter.  *Id.* ¶¶ 55-61.  At that time, the police confiscated three firearms from Plaintiff's home.  *Id.* ¶ 66.

The Second Amended Complaint further alleges that thereafter, Plaintiff was taken to Defendant Monmouth Medical Center Southern Campus ("MMC") against his will, where he was held in a locked room for over twenty-four hours without a cell phone.  *Id.* ¶¶ 67, 71, 73.  While Plaintiff was at MMC, Defendant Jurkanski allegedly "communicated with MMC staff members and continuously importuned them to keep Plaintiff committed."  *Id.* ¶ 77.

Plaintiff alleges that on September 18, 2022, he was involuntarily transported to Saint Barnabas where he was again held against his will and subjected to involuntary medical examination.  *Id.* ¶¶ 79-81.  Again, Plaintiff alleges that Jurkanski involved himself in Plaintiff's involuntary commitment "by discussing [various] issues with [medical] personnel, and attempting to direct their care and treatment of Plaintiff."  *Id.* ¶¶ 84-85.

As a result of these allegations, Plaintiff brings multiple claims against Jurkanski, including: (a) false arrest and wrongful imprisonment pursuant to 42 U.S.C. § 1983 and New Jersey state law (Counts II and III), *id.* ¶¶ 109-130; (b) unreasonable search in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 and New Jersey state law (Counts V and VI), *id.* ¶¶ 136-146; (c) deprivation of liberty and property without due process of law under 42 U.S.C. § 1983 (Count IX), *id.* ¶¶ 166-177; (d) malicious prosecution in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983 and New Jersey state law (Counts XII and XIII), *id.* ¶¶ 191-205; and (e) abuse of process under 42 U.S.C. § 1983 (Count XV), *id.* ¶¶ 211-215.

## DISCUSSION

Federal Rule of Civil Procedure 55(c) provides, in pertinent part, that "[t]he court may set aside an entry of default for good cause . . ." Fed. R. Civ. P. 55(c). Although a decision to set aside the entry of default "is left primarily to the discretion of the district court," the Third Circuit Court of Appeals has stressed that it "does not favor entry of defaults or default judgments." *U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984). Thus, "doubtful cases [must] be resolved in favor of the party moving to set aside the default judgment 'so that cases may be decided on their merits.'" *Id.* at 194-95 (quotations and citations omitted); *see also Mrs. Ressler's Food Prods. v. KZY Logistics LLC*, 675 F. App'x 136, 137 (3d Cir. 2017) (noting that "entry of default is an 'extreme sanction'" that is "generally disfavored").

Motions to vacate a default are held to a lesser standard and granted more readily than motions to vacate default judgment. *HEI Invs., LLC v. Black Diamond Cap. Appreciation Fund, LP*, No. 15-746, 2016 WL 952338, at *2 (D.N.J. Mar. 14, 2016) (citation omitted). However, when analyzing either a motion to set aside a default (under Rule 55(c)) or to vacate the entry of default judgment (under Rule 60(b)), a court considers the same factors: "(1) whether the plaintiff

4

will be prejudiced; (2) whether the defendant has a meritorious defense; [and] (3) whether the default was the result of the defendant's culpable conduct." *55,518.05 in U.S. Currency*, 728 F.2d at 195 (citations omitted).

### A.  **Prejudice**

The first factor requires the Court to consider the potential prejudice to the plaintiff. "[P]rejudice accrues due to the loss of evidence, increased potential for fraud or collusion, or a substantial reliance on the judgment." *HEI Invs.*, 2016 WL 952338, at *3 (citing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 657 (3d Cir. 1982)).  Delay, without more, "rarely serves to establish the degree of prejudice sufficient to prevent the opening [of] a default judgment entered at an early stage of the proceeding." *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 74 (3d Cir. 1987) (alteration in original) (quoting *Feliciano*, 691 F.2d at 656-57); *see also Sunoco, Inc. (R&M) v. Glob. Recycling & Demolition, LLC*, 300 F.R.D. 253, 256 (E.D. Pa. 2014) ("'Delays in [p]laintiff's potential recovery or potential expenses incurred from litigating the matter on the merits do not constitute the kind of prejudice the [c]ourt should consider in deciding whether to set aside an entry of default.'" (quotation omitted)).

Plaintiff argues that "[g]iven [Jurkanski's] influence over the defendant Township of Lakewood and the Individual Lakewood Defendants, as well as the Medical Defendants in this action, vacating his default will result in an increased likelihood of collusion among the Defendants." Pl.'s Br. at 10-11.  He further posits that since "no explanation is offered for the delay between acknowledged service of the First Amended Complaint and the instant motion to vacate, there is a risk of loss of evidence." *Id.* at 11.  The Court disagrees.

Plaintiff's vague speculation regarding potential collusion and loss of evidence does not suffice to establish prejudice.  Indeed, despite Plaintiff's concerns about Jurkanski's involvement,

5

he did not name Jurkanski as a Defendant in the original Complaint. *See* ECF No. 1, Compl. Plaintiff then filed his Amended Complaint on May 30, 2024, *see* ECF No. 33, First Am. Compl., but did not serve Jurkanski for another six weeks, *see* ECF No. 54, Proof of Service. On July 20, 2024, before Jurkanski's time for response expired, Plaintiff filed a Second Amended Complaint on the docket. Given the repeated amendments of the operative complaint, this case remains at its earliest stages, with the initial Scheduling Order entered on September 12, 2024. *See* ECF No. 81, Scheduling Order. Fact discovery is not set to close until March 31, 2025, *id.* ¶ 10, and has been stayed as to two of the Defendants who have pending motions to dismiss, *see* ECF No. 84, Order. Plaintiff now fails to explain how allowing Jurkanski to proceed on the merits in this matter would somehow result in "an increased likelihood of collusion among Defendants" or a "risk of loss of evidence." Given the absence of any demonstrable prejudice, this factor weighs in favor of vacating default.

### B. Meritorious Defense

Under the second factor, a meritorious defense constitutes a complete bar to the action at trial. *$55,518.05 in U.S. Currency*, 728 F.2d at 195; *see also HEI Invs.*, 2016 WL 952338, at *3. The defendant must assert facts supporting the existence of a meritorious defense rather than simply denying the allegations of the complaint. *NuMed Rehab., Inc. v. TNS Nursing Homes of Pa., Inc.*, 187 F.R.D. 222, 224 (E.D. Pa. 1999). Ultimately, however, the court "need not decide the legal issue"; rather, it may simply make a finding that the "proffered defense is not 'facially unmeritorious.'" *Emcasco*, 834 F.2d at 73-74 (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123 (3d Cir. 1983)). "In cases seeking to vacate only the entry of default, as opposed to the default judgment, 'courts in this circuit seem unwilling to deny the motion to set aside entry of default solely on the basis that no meritorious defense exists.'" *DirecTV, LLC v. Alvarez*, No. 15-

6827, 2017 WL 4284526, at *3 (D.N.J. Sept. 27, 2017) (quoting *Mike Rosen & Assocs., P.C. v. Omega Builders*, *Ltd.*, 940 F. Supp. 115, 121 (E.D. Pa. 1996)).

Here, Jurkanski argues that he maintains several meritorious defenses, including that: (a) he is a private citizen not subject to 42 U.S.C. § 1983 liability; and (b) many of the allegations in the Second Amended Complaint are untrue and will be refuted. Def.'s Br. at 3. Plaintiff responds with a legal analysis of how private citizens may be held liable under § 1983, claiming that this defense is "flatly contradicted by controlling case law. Pl.'s Br. at 5-6. He further alleges that the Second Amended Complaint also brings other claims under New Jersey state law against Jurkanski. *Id.* at 6. Finally, Plaintiff contends that mere blanket denials of the allegations in a complaint are insufficient to establish a meritorious defense, and that in any event, Jurkanski fails to attach a proposed answer to his motion as required. *Id.* at 7. In reply, Jurkanski provides an affidavit specifically denying many of the alleged facts in the Second Amended Complaint, ECF No. 117-1, Certification of Chaim Jurkanski ("Jurkanski Certif."), as well as a proposed Answer to the Second Amended Complaint denying the majority of the Second Amended Complaint's allegations, ECF No. 117-3, Certification of Sean Colquhoun ("Colquhoun Certif.") ¶ 11 & Ex. B (Proposed Answer).

For purposes of this Motion, the Court finds that Jurkanski has set forth a potentially meritorious defense. As Plaintiff correctly notes, "'a private party may be liable under § 1983 when the private-party defendant deprived the plaintiff of a constitutional right by exercising a right or privilege having its source in state authority and where the private-party defendant may be appropriately characterized as [a] state actor[].'" *Sexton v. N.J. Dep't of Corrs.*, No. 21-20404, 2024 WL 4615763, at *18 (D.N.J. Oct. 30, 2024) (quoting *Diamond v. Pa. State Educ. Ass'n*, 972 F.3d 262, 269-70 (3d Cir. 2020) (internal citations and quotations omitted)). Nonetheless,

7

Jurkanski's Certification sets forth facts that, if proven at trial, would preclude Plaintiff from establishing either the § 1983 claims or any of the New Jersey state law claims for false arrest, wrongful imprisonment, unreasonable search, deprivation of liberty and property, malicious prosecution, and abuse of process. Specifically, Jurkanski attests, in part, that:

> 8. I am not a rabbi. I am an active member of my religious community and try to help other members when asked to do so. I am known in the community as someone you can talk to about many issues with which you may need help. This is in a lay capacity, not in any official capacity.
>
> 9. I am not part of a "hugely influential coalition of religious leaders" and have no involvement in politics in Lakewood or anywhere else. I have never been a part of such a group.
>
> 10. I am unequivocally not a "religious enforcer" and no one hires me to do anything. As a member of the community, I will counsel and help others when asked, if I am able. Nothing more.
>
> 11. I am familiar with the plaintiff, as I had spoken with him several times before September 17, 2022. At one point, his daughter was having marital problems and approached the rabbi for help with the marriage. The rabbi requested that I try to help. I would speak with the plaintiff in the parking lot where he was waiting for his daughter.
>
> 12. At or around the same time, I learned from him that he and his wife were having marital problems.
>
> 13. I did speak with plaintiff the evening of September 17, 2022. He called me and was upset that I had spoken with his wife and told her she could go to visit her daughter if she wished. Apparently, he had told her he did not want her to visit their daughter.
>
> 14. During this conversation he stated to me that he was going to go jump off a bridge.
>
> 15. Hearing this, I called his wife right away to tell her about the conversation. At that time she told me that her daughter received the same phone call from her father and was hysterical.
>
> 16. I never threatened to have the plaintiff locked up, and did nothing to assist or encourage the police to take him into custody.

8

> 17. I only spoke with the police when they contacted me and I told them of my conversation with plaintiff where he said he was going to jump off a bridge.
>
> 18. I have never discussed plaintiff's mental or medical condition with anyone from MMC, St. Barnabas or any other medical provider. As there was no HIPPA [sic] authorization permitting me to do so, I could not have any discussions, nor could the facilities disclose any information to me. The allegations that I did are simply not true.

Jurkanski Certif. ¶¶ 8-18. Plaintiff's proffer goes beyond "simple denials and conclusory statements" and rises to the level of "specific facts" that provides a basis for the denial of all of Plaintiff's claims. The Court concludes that Jurkanski is able to advance a complete and facially meritorious defense. *$55,518.05 in U.S. Currency*, 728 F.2d at 195. Accordingly, the Court finds that this factor weighs in favor of vacating the default.

### C. **Culpable Conduct**

The final factor examines "whether the default was the result of the defendant's culpable conduct." *Id.* (citations omitted). "Culpable conduct surpasses mere negligence and consists of willful, intentional, reckless or bad faith behavior." *Malibu Media, LLC v. Waller*, No. 15-3002, 2016 WL 184422, at *4 (D.N.J. Jan. 15, 2016) (quotations omitted). "Although reckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard, a mere failure to respond to a claim despite having notice is generally not culpable conduct." *Id.* (cleaned up) (citing *Wingate Inns Int'l v. P.G.S., LLC*, No. 09-6198, 2011 WL 256327, at *4 (D.N.J. Jan. 26, 2011) (finding no culpable conduct where failure to respond "was the result of miscommunication and ignorance, not bad faith or strategy")). The court must also consider the extent to which the error is attributable exclusively to the defendant's counsel. *Momah v. Albert Einstein Med. Ctr.*, 161 F.R.D. 304, 308 (E.D. Pa. 1995).

9

Here, Plaintiff certifies that he was served with the First Amended Complaint on July 16, 2024, erroneously listing him as "Chaim Yorkshanksy." Jurkanski Certif. ¶¶ 3-5. Despite being improperly named, Jurkanski avers that he promptly turned over the summons and First Amended Complaint to his insurance agent, who then provided it to his insurance carrier, Farmers Mutual Fire Insurance Company of Salem ("Farmers of Salem"). *Id.* ¶ 5. Farmers of Salem acknowledged receipt of these papers on July 25, 2024, nine days after service. *Id.* ¶ 6 & Ex. A (Letter from Ralph Minelli, Claims Department, dated July 25, 2024).

Ralph Minelli of Farmers of Salem attests that he spoke with Jurkanski on August 2, 2024, regarding whether the matter would be covered and advised him that the allegations of the Amended Complaint were being evaluated to determine whether there was coverage. ECF No. 117-2, Certification of Ralph Minelli ("Minelli Certif.") ¶ 7. The matter was assigned to coverage counsel for evaluation on August 8, 2024; on August 19, 2024, Mr. Minelli advised Jurkanski that he was still waiting for the coverage opinion. *Id.* ¶¶ 8-9. On Sunday, August 25, 2024, the coverage analysis was emailed to Mr. Minelli, who received it on August 26, 2024. *Id.* ¶ 10. Pursuant to that analysis, on September 4, 2024, Mr. Minelli advised Jurkanski that Farmers of Salem would provide him with a defense pursuant to a reservation of rights. *Id.* ¶ 11.

On September 6, 2024, Mr. Minelli assigned the defense of this matter to the law firm of Colquhoun & Colquhoun, P.A. *Id.* ¶ 14. That same day, default was entered against Jurkanski. *Id.* Mr. Minelli reached out to defense counsel on September 13, 2024, at which point he learned that his initial email to defense counsel with the file had not been received. *Id.* ¶ 15. He resent the file on Saturday, September 14, 2024. *Id.* According to Sean Colquhoun, Esquire of Colquhoun & Colquhoun, his firm first received the file on Monday, September 16, 2024, and he drafted an answer. ECF No. 117-3, Certification of Sean Colquhoun ("Colquhoun Certif.") ¶¶ 4-6. After

Mr. Colquhoun finalized the answer, he learned that Plaintiff had filed a Second Amended Complaint in the interim and that default had already been entered against Jurkanski. *Id.* ¶¶ 6-7. Given these events, counsel did not reach out to either Plaintiff or the Court for an extension of time to answer and instead, filed the current motion to vacate on October 10, 2024. *Id.* ¶¶ 9-10.

Based on these Certifications, the Court finds that the default did not result from Plaintiff's willful or bad faith conduct. On the contrary, despite being improperly named in the Second Amended Complaint, Jurkanski promptly provided the papers to his insurer. All further delay was occasioned at the hands of the insurance company and its assigned defense counsel but was well explained given the repeated iterations of the Complaint.[2] While the Court does not condone the late filing, nothing in the record suggests "flagrant bad faith." *Emcasco Ins. Co.*, 834 F.2d at 75. Accordingly, the Court finds that this factor weighs in favor of vacating default.

## CONCLUSION

For the foregoing reasons, the Clerk's entry of default against Defendant Chaim Jurkanski shall be vacated. An appropriate Order follows.

s/Elizabeth A. Pascal<br>
ELIZABETH A. PASCAL<br>
United States Magistrate Judge

cc: Hon. Edward S. Kiel, U.S.D.J.

---

[2] Plaintiff cites several cases for the proposition that a delay due to insurance coverage review is not considered a reasonable basis for setting aside a default. Pl.'s Br. at 9. In each of these cases, however, the delay by the insurer was not satisfactorily explained. *See Boston Post Road Med. Imaging, P.C. v. Allstate Ins. Co.*, 221 F.R.D. 410, 413 (S.D.N.Y. 2004) (unexplained delay of two months after default to even retain counsel); *Spica v. Garczynski*, 78 F.R.D. 134, 135-36 (E.D. Pa. 1978) (unexplained three-month delay between the taking of the default and the motion to vacate default); *Wagg v. Hall*, 42 F.R.D. 589, 590-91 (E.D. Pa. 1967) (unexplained delay of two and a half years between entry of default judgment and motion to vacate default judgment). Here, the motion to vacate default was filed on October 10, 2024, just over one month after the default was entered and with a satisfactory explanation.

11