## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SHIMON SHENKER,**<br><br>　　　　**Plaintiff,**<br><br>　　v.<br><br>**TOWNSHIP OF LAKEWOOD,** *et al.*,<br><br>　　　　**Defendants.** | Case No. 24–cv–03131–ESK–EAP<br><br>OPINION |

**KIEL, U.S.D.J.**

　　**THIS MATTER** is before the Court on defendant County of Ocean's (County) motion to dismiss (County Motion) (ECF No. 58; ECF No. 58–3 (County Mov. Br.)) and defendant Ocean County Prosecutor's Office's (OCPO) motion to dismiss and for partial summary judgment (OCPO Motion) (ECF No. 83; ECF No. 83–2 (OCPO Mov. Br.)).  Plaintiff filed oppositions to the County Motion and OCPO Motion (ECF No. 60 (Opp'n to County); ECF No. 93 (Opp'n to OCPO)), to which the County and OCPO filed replies (ECF Nos. 62, 97).  For the following reasons, the Federal Rule of Civil Procedure (Rule) 12(b) aspects of the County Motion and OCPO Motion are **GRANTED**.

### I.　FACTUAL BACKGROUND[1]

#### A.　The Extreme Risk Protective Order (ERPO) Process

　　Pursuant to the ERPO Act of 2018, "law enforcement officers [may] petition a court for a protective order to disarm an individual who poses a

---

[1] I set forth only those facts that are necessary for context and are relevant to the County and OCPO.

danger to themselves or others 'by having custody or control of, owning, possessing, purchasing, or receiving a firearm.'" *Burg v. Platkin*, No. 24–10076, 2024 WL 5198776, at *2 (D.N.J. Dec. 23, 2024) (quoting N.J. Stat. Ann. §2C:58-23(a)). This "process proceeds in two stages: a temporary extreme risk protective order (TERPO) and a final extreme risk protective order (FERPO)." *Id.* "A law enforcement officer seeking a TERPO must submit an affidavit outlining the facts establishing, or the reasons for believing, the 'grounds' for a protective order, and information about firearms the officer believes the respondent controls or possesses." *Id.* (quoting N.J. Stat. Ann. §2C:58-23(b)). "If [a] court finds 'good cause to believe that the respondent poses an immediate and present danger of causing bodily injury' to themselves or others by having, possessing, controlling, or receiving a firearm, the court must issue a TERPO," which "shall be enforced by all law enforcement officers." *Id.* (quoting N.J. Stat. Ann. §2C:58-23(e)); N.J. Stat. Ann. §2C:58-23(k). The court must then hold a FERPO hearing within 10 days of issuing the TERPO to decide whether the TERPO "prohibit[ing] the respondent from, among other things, having, controlling, possessing, purchasing, or receiving a firearm while the order is in place" should be finalized. *Burg*, 2024 WL 5198776, at *2; N.J. Stat. Ann. §§2C:58-23(g), 24(a).

"When deciding to issue [a] FERPO, the court must consider the same statutory criteria it did when issuing a TERPO, i.e. prior history of threats or violence, 'as well as any other relevant evidence.'" *Burg*, 2024 WL 5198776, at *2 (quoting N.J. Stat. Ann. §2C:58-24(c)). "If the court finds, by the preponderance of the evidence, that the respondent 'poses a significant danger of bodily injury to the respondent's self or others by having, possessing, purchasing, or receiving a firearm, the court must issue a FERPO." *Id.* (quoting N.J. Stat. Ann. §2C:58-24(b). The parties may appeal the grant or denial of a FERPO petition within 45 days of the decision or request at any time

2

that the FERPO be terminated. N.J. Stat. Ann. §2C:58-25. If a termination order is entered, the respondent may "petition the agency for the return of any surrendered firearms or ammunition." *Id.* §2C:58-26. "Within 30 days of receiving a petition for the return of surrendered firearms or ammunition … the agency shall return the firearm or ammunition unless: (1) the firearm has been reported as stolen; or (2) the respondent is prohibited from possessing a firearm under State or federal law." *Id.*

### B. Plaintiff's ERPO Proceedings

Following an incident in September 2022 resulting in plaintiff's involuntary commitment for a psychiatric and suicide risk evaluation, the Township of Lakewood Municipal Court issued a TERPO against plaintiff. (ECF No. 51 (Second Am. Compl.) ¶¶ 53, 56–60, 78.) Pursuant to the TERPO, defendant Lakewood Police Department confiscated plaintiff's firearms. (*Id.* ¶¶ 70, 78.) Plaintiff was eventually released as being non-suicidal, and in October 2023, the Superior Court of New Jersey held a FERPO hearing, at which it determined that plaintiff posed no "significant danger of bodily injury to self or others." (*Id.* ¶¶ 86–88; ECF No. 93–3.) The FERPO petition was denied, thereby vacating the TERPO. (Second Am. Compl. ¶ 88; ECF No. 93–3.)

Plaintiff requested that the County and OCPO return his firearms, but his request was denied. (Second Am. Compl. ¶¶ 89–91; *see* ECF No. 58–4 (letter from the OCPO dated November 6, 2023, denying plaintiff's request for the return of his firearms because his medical records indicating he was involuntarily committed have not been expunged); ECF Nos. 93–4 (same).)[2]

---

[2] The letter at ECF No. 58–4 is attached as an exhibit to the County Motion. The same letter is also attached as an exhibit to plaintiff's opposition to the OCPO Motion at ECF No. 93–4. Although plaintiff argues in opposition to the County Motion that the Court cannot consider this letter to resolve the County Motion because it is a document not attached to nor referenced in the second amended complaint

3

As the owner and manager of a protective services and security company, plaintiff is required to bear firearms. (Second Am. Compl. ¶28.) However, given that that the "County or OCPO represented to [plaintiff] that … his previous involuntary commitment … irrevocably and forever disqualifies him from purchasing, owning, or bearing a firearm ever again," plaintiff has been unable to operate his business. (*Id.* ¶¶90–95.) To date, plaintiff's firearms have not been returned to him. (Second Am. Compl. ¶89.)

## II. PROCEDURAL HISTORY

On March 15, 2024, plaintiff commenced this action against several defendants, including the County and OCPO. (ECF No. 1.) Upon the County and OCPO requesting leave to move to dismiss the initial complaint (ECF Nos. 14, 18), plaintiff filed an amended complaint removing the OCPO as a defendant (ECF Nos. 20, 22, 33). The County then requested leave to file a motion to dismiss the amended complaint, which plaintiff opposed. (ECF Nos. 35, 36.) Pursuant to the discussion I had with the County and plaintiff during the July 2, 2024 pre-motion conference (ECF Nos. 37, 72), the County and plaintiff stipulated to the filing of a second amended complaint and briefing schedule for the County Motion (ECF Nos. 49, 53).

On July 20, 2024, plaintiff filed the second amended complaint renaming the OCPO as a defendant. (Second Am. Compl. ¶20.) Of the 19-counts, the following four counts are asserted against the County: (1) count seven, conversion and replevin; (2) count eight, deprivation of liberty and property

---

(Opp'n to County Motion p.7), plaintiff relies upon the same letter in support of his position against the OCPO (Opp'n to OCPO Motion pp.2, 4–7, 11, 17). While plaintiff is correct that this letter is not expressly included in the second amendment complaint, I find it to be directly related to plaintiff's claim that his request for the return of his firearms was denied. (*See* Second Am. Compl. ¶¶89–91.) Since this letter is an "undisputedly authentic document" upon which "plaintiff's claims are based," I will consider it to resolve the County Motion and OCPO Motion. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

4

without due process; (3) count 17, unconstitutional policy; and (4) count 19, negligent hiring, training, and supervision. (Second Am. Compl. pp. 23–25; 36–38.) Only counts seven and eight are asserted against the OCPO. (*Id.* pp. 23–25.)[3]

On July 26, 2024, the County Motion was filed. (*See* County Mov. Br.) The County argues that because this action arises from the law enforcement activities of the OCPO, and plaintiff does not allege any specific non-law enforcement conduct, it is not the real party-in-interest. (*Id.* pp. 11–13.) Plaintiff, however, alleges that since the "County is responsible for the conduct for the OCPO, liability of the County is plausibly pled, and the County has proffered no basis for dismissal." (Opp'n to County p. 5.)

The OCPO Motion was then filed on September 19, 2024. (*See* OCPO Mov. Br.) The OCPO challenges this Court's subject matter jurisdiction by asserting that it is protected by Eleventh Amendment sovereign immunity. (OCPO Mov. Br. pp. 12–14.) While plaintiff argues that the OCPO was acting within its administrative duties when exercising custody plaintiff's firearms (Opp'n to OCPO pp. 9–15), the OCPO maintains that because such conduct falls squarely within its law enforcement responsibilities, the claims asserted against it must be dismissed (OCPO Mov. Br. pp. 12–14). The OCPO also notes that because it is not a "person" within the meaning of 42 U.S.C. § 1983, and plaintiff failed to provide proper notice of its conversion and replevin claim, counts seven and eight of the second amended complaint cannot survive. (*Id.* pp. 14–16.)

---

[3] In opposition to the OCPO Motion, plaintiff indicates that the second amended complaint includes an "inverse condemnation claim." (Opp'n to OCPO pp. 12, 13.) No such claim is raised in the second amended complaint. To the extent plaintiff is seeking to add such a claim, "it is axiomatic that the complaint … not be amended by the briefs in opposition to a motion to dismiss." *Com. of. Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

### III. LEGAL STANDARD

    A.    <u>Rule 12(b)</u>

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). To survive dismissal under Rule 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Courts shall accept the plaintiff's factual assertions, which "'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 342 (first quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

A motion to dismiss pursuant to Rule 12(b)(1) may attack subject matter jurisdiction facially or factually. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A factual attack challenges the allegations supporting the assertion of jurisdiction, which permits a court to weigh evidence outside of the pleadings and places the burden of proof on the plaintiff to demonstrate that jurisdiction exists. *Id.* A facial attack does not dispute the facts as alleged and essentially applies the Rule 12(b)(6) standard. *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 221 (D.N.J. 2022).

B.    Rule 56

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it will "affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party."  *Id*.  The movant "bears the burden of demonstrating the absence of any genuine issues of material fact."  *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996).  The party may satisfy its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case."  *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," and credibility determinations are for the fact finder.  *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998); *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

IV. DISCUSSION

"The Eleventh Amendment provides that '[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of

another State, or by Citizens or Subjects of any Foreign State.'" *Laniado v. Cnty. of Ocean*, No. 18–01513, 2018 WL 6171820, at *3 (D.N.J. Nov. 26, 2018) (alteration in original) (quoting U.S. Const. amend. XI). "The Eleventh Amendment bars suits against any state or its agencies in federal court by that state's own citizens as well as by citizens of other states." *Davis v. Twp. of Lakewood*, No. 03–01025, 2005 WL 1863665, at *3 (D.N.J. Aug. 4, 2005). "Absent a clear waiver by a state of its sovereign immunity under the Eleventh Amendment or a congressional abrogation of that immunity, a federal court lacks [subject matter] jurisdiction to hear claims brought by an individual against a state." *Id.* "The Eleventh Amendment precludes both legal and equitable relief." *Id.*

"A suit is barred by Eleventh Amendment immunity 'even though the state is not named a party to the action, as long as the state is the real party[-]in[-]interest.'" *Id.* (alterations in original) (quoting *Carter v. City of Philadelphia*, 181 F.3d 339, 347 (3d Cir.1999)). "A state is a party-in-interest in proceedings where 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act.'" *Id.* (quoting *Fitchik v. New Jersey Transit Rail Operations, Inc.*, 873 F.2d 655, 659 (3d Cir.1989)). "Eleventh Amendment immunity, therefore, extends to entities that function as an 'arm of the state.'" *Id.* (quoting *Chisolm v. McManimon*, 275 F.3d 315, 322–23 (3d Cir.2001)).

"[T]o determine whether a defendant is indeed an 'arm of the state' entitled to" sovereign immunity, our courts consider: "(1) whether payment of a judgment resulting from the suit would come from the state treasury, (2) the status of the entity under state law, and (3) the entity's degree of autonomy." *Laniado*, 2018 WL 6171820, at *3 (quoting *Fitchik*, 873 F.2d at 659). Of note,

"not all three [of these] factors are given equal weight." *Id.* Instead, the first factor "is the most important question, and generally proves dispositive." *Id.*

"County prosecutors possess a 'dual or hybrid status,' functioning in an administrative capacity as well as a law enforcement capacity." *Davis*, 2005 WL 1863665, at *4 (quoting *Coleman v. Kaye*, 87 F.3d 1491, 1499 (3d Cir.1996)). Thus, "[w]hen considering whether a county prosecutor's office is entitled to sovereign immunity, a court must first determine in which capacity the prosecutor's office was acting when the actions that gave rise to the plaintiff's claims took place." *Landi v. Borough of Seaside Park*, No. 07–05319 2009 WL 606141, at *4 (D.N.J. Mar. 9, 2009). "When county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State" and are entitled to sovereign immunity. *Id.* (quoting *Coleman*, 87 F.3d at 1505–06); *see Wright v. New Jersey*, 778 A.2d 433, 465 (N.J. 2001) (holding that the State of New Jersey must defend and immunize county prosecutors for alleged "tortious conduct committed during the investigation, arrest, and prosecution of [a plaintiff]"). In contrast, when "county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions … the county prosecutor in effect acts on behalf of the county that is the situs of his or her office." *Davis*, 2005 WL 1863665, at *4 (quoting *Coleman*, 87 F.3d at 1499). "The county, therefore, 'cannot be held vicariously liable for the actions of prosecutorial defendants involving the investigation of criminal activity' or the execution of such defendants' sworn duties to enforce the law." *Id.* (quoting *Wright*, 778 A.2d at 455).

Here, the claims asserted against the OCPO concern the OCPO's interpretation and application of the ERPO Act and New Jersey Attorney General Directive No. 2019–2 (Directive). New Jersey Attorney General Law Enforcement Directive No. 2019–2, "Attorney General Directive Pursuant to the Extreme Risk Protective Order Act of 2018" (Aug. 15, 2019), available at

9

https://www.nj.gov/oag/dcj/agguide/directives/ag-directive-2019-2.pdf.  [4]  "As the New Jersey Supreme Court observed, 'the [New Jersey] Attorney General has been given statutory authority to guide law enforcement entities' and 'that authority has been used to adopt guidelines, directives, and policies for law enforcement in this state.'"  *Seidle v. Neptune Twp.*, No. 17–04428, 2021 WL 1720867, at *5 (D.N.J. May 1, 2021) (alteration in original) (quoting *Gramiccioni v. Dep't of L. & Pub. Safety*, 235 A.3d 129, 142 (N.J. 2020)).  "The Attorney General "maintains a general supervision over ... county prosecutors ... [and] that oversight relates to the maintenance of an effective statewide law enforcement policy." *Davis*, 2005 WL 1863665, at *4 (quoting *Coleman*, 87 F.3d at 1501); *Wright*, 778 A.2d at 462 (noting that "a county prosecutor's law enforcement function is unsupervised by county government or any other agency of local government, but remains at all times subject to the supervision and supersession power of the Attorney General").

Pursuant to this authority, the Directive was issued to guide "law enforcement agencies and prosecutors' offices on the implementation of the [ERPO] Act."  New Jersey Attorney General Law Enforcement Directive No. 2019–2.  While plaintiff acknowledges that the OCPO was acting in accordance with the ERPO Act, plaintiff argues that because this is not a

---

[4] Although plaintiff did not reference the Directive in the second amended complaint, because it is a matter of public record, I am permitted to consider it when deciding the OCPO Motion and County Motion.  *See Pension Ben. Guar. Corp.*, 998 F.2d at 1196 (holding that "[t]o decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record").

criminal statute, the OCPO decision to exercise control over plaintiff's firearm was not a prosecutorial function. (Opp'n to OCPO p.11.)

Courts, however, recognize ERPO proceedings [to] have … 'striking similarit[ies]' to a criminal prosecution." *Burg*, 2024 WL 5198776, at *6 (alteration in original) (quoting *Borowski v. Kean Univ.*, 68 F.4th 844, 851 (3d Cir. 2023)). For example, ERPO proceedings "bear the hallmarks of many criminal prosecutions" in that it involves the taking of statements, the submission of petitions for a court's approval, and the possible issuance of search warrants. *Id.* Regardless of whether a criminal investigation is involved, a prosecutor's "State-delegated responsibility to enforce the law that the Attorney General has entrusted to prosecutors," falls within the ambit of performing law enforcement functions and "is not akin to … administrative duties." *Gramiccioni*, 235 A.3d at 144 (holding that the prosecutor's office implementation of the New Jersey Attorney General's directive involving individuals who are authorized to carry weapons was a prosecutorial function); *see Seidle*, 2021 WL 1720867, at *3–6. Thus, plaintiff's claims clearly arise from the OCPO's law enforcement responsibilities. Furthermore, the fact the Attorney General is representing the OCPO in this action and providing its defense demonstrates that the Attorney General will indemnify the OCPO for all matters in this case. *See Laniado,* 2018 WL 6171820, at *5; *Landi*, 2009 WL 606141, at *4; *Coleman*, 87 F.3d 1501 (noting that the Attorney General "maintains a general supervision over ... county prosecutors"). "As such, any judgment awarded to [p]laintiff[] would be paid out of the state treasury." *Laniado,* 2018 WL 6171820, at *5. Accordingly, the first factor to determine whether the OCPO was acting as an arm of the state is satisfied.

As to the second and third factors, "it is clear that under New Jersey law [the] OCPO is a state entity when performing its prosecutorial functions" and "is not an autonomous entity." *Landi*, 2009 WL 606141, at *5. Since all

11

factors to determine whether the OCPO was acting was an arm of the state is satisfied, I find that the County cannot be held vicariously liable for the OCPO's actions and that OCPO is entitled to Eleventh Amendment immunity.

With this framework in mind, I will discuss each of the claims asserted against the County and OCPO. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 90, 106 (1984) (holding that "[a] federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment).

### A. Count Seven

Plaintiff argues that because the Superior Court of New Jersey vacated the TERPO entered against him, retention of his firearms constitutes conversion for which replevin is necessary. (Second Am. Compl. ¶¶ 147–154.) However, the OCPO argues that it is protected by Eleventh Amendment immunity against this claim, and the County asserts that because it neither possesses nor controls plaintiff's firearms, this claim must be dismissed. (OCPO Mov. Br. pp. 12–14; County Mov. Br. pp. 14, 15.) Both the County and OCPO also note that because plaintiff failed to serve them with a notice of claim pursuant to the New Jersey Tort Claims Act, this count cannot survive. (OCPO Mov. Br. pp. 15–17; County Mov. Br. p. 24.)

"Under New Jersey law, the common law action of conversion is the 'unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition[,] or the exclusion of an owner's rights.'" *CHEP USA v. H&M Pallets, LLC*, No. 23–20986, 2024 WL 124672, at *3 (D.N.J. Jan. 11, 2024) (quoting *Capital Health Sys., Inc. v. Veznedaroglu*, 15–08288, 2017 WL 751855, at *10 (D.N.J. Feb. 27, 2017)). "A claim for conversion is established if a party proves that the alleged offender assumed and exercised the right of ownership over the party's goods or personal chattels without permission, and excluded the owner from

exercising dominion over them." *Video Pipeline, Inc. v. Buena Vista Home Ent., Inc.*, 275 F. Supp. 2d 543, 576 (D.N.J. 2003). "[S]uch a claim must be 'presented by the claimant or by a person acting on his behalf' and must include'" a notice as set forth in the New Jersey Tort Claims Act. *All Vision, LLC v. Carole Media, LLC*, No. A–3378–16T4, 2019 WL 3559415, at *6 (N.J. Super. Ct. App. Div. Aug. 6, 2019). Failure to comply with the notice requirement will forever bar a plaintiff from pursuing such relief. *Id.*

"A person seeking [to] recover[] … goods wrongly held by another may bring an action for replevin." N.J. Stan. Ann. §2B:50-1. "It is accepted law in New Jersey that a defendant need not have actual possession of the goods sought to be returned in order for the plaintiff to maintain an action of replevin against him; if [the] defendant exercises control over the goods, the action may remain." *Super Laundry Equip. Corp. v. Chan*, No. 13–07381, 2015 WL 3953887, at *4 (D.N.J. June 29, 2015).

Plaintiff alleges in opposition to the County Motion that because he "does not know who specifically is currently in possession of [his] firearms, who is in control of returning and failing to return those firearms, or who is responsible for making the decision to allow [him] to possess firearms," he is bringing this claim against both the County and OCPO. (Opp'n to County Motion p.6.) Plaintiff, however, concedes in his opposition to the OCPO Motion that "[t]he firearms are believed to be currently in the custody of the [OCPO]." (ECF No. 93–5 ¶9.) Plaintiff cannot seek the return of his firearms from the County, when the County neither had nor has control over the firearms.[5] *See supra* pp. 9–12.

---

[5] In support of the County's position that it does not possess plaintiff's firearms, it attaches as an exhibit to the County Motion an email correspondence from the County advising plaintiff's counsel that the Lakewood Police Department and OCPO have plaintiff's firearms. (ECF No 58–4.) This correspondence is outside of the four corners of the complaint, so I cannot consider it to resolve the County Motion, unless the County Motion is converted into a motion for summary judgment. *See Pension*

13

As to whether this claim can survive against the OCPO, it is well established that the Eleventh Amendment bars plaintiffs from suing state governments in federal court for violations of state law. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 90, 106 (holding that "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law"). "[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment." *Id.* at 121. In addition to arguing that Eleventh Amendment immunity does not apply to the non-monetary aspect of his claims, plaintiff argues that because the OCPO waived its right to immunity to this claim because "New Jersey, in ratifying the Fourteenth Amendment and its own constitution … expressly agreed to pay just compensation," the OCPO Motion must be denied. (Opp'n to OCPO pp. 12–16.) These arguments are, however, meritless.

The Eleventh Amendment bars suits against a state regardless of whether a plaintiff is seeking damages or injunctive relief. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 102. Furthermore, plaintiff fails to demonstrate that the OCPO, as an arm of the State, unequivocally expressed consent to suit in federal court for alleged violations of state laws. *Id.* at 99 (holding that "although Congress has power with respect to the rights protected by the Fourteenth Amendment to abrogate the Eleventh Amendment, we have required an unequivocal express of congressional intent to 'overturn the constitutionally guaranteed immunity to the … States'" (quoting *Quern v. Jordan*, 440 U.S. 332, 342 (1979))).

---

*Ben. Guar. Corp.*, 998 F.2d at 1196–97. Because I find that the County is not in possession or control of plaintiff's firearms through information provided in or related to the second amended complaint, no such conversion is needed.

14

Given that this count will be dismissed because of the County not being the real party-in-interest and the OCPO's immunity, I will not address the merits of the County and OCPO's argument as to the New Jersey Tort Claims Act's notice requirement. (*See* OCPO Mov. Br. pp. 15–17; *see* County Mov. Br. p. 24.) Accordingly, the OCPO's request that summary judgment be entered against plaintiff as to the conversion aspect of the second amended complaint is deemed moot. (*See* OCPO Mov. Br. pp. 15–17.)

### B.  Count Eight

In count eight, plaintiff alleges that the County and OCPO deprived him of his Second and Fourteenth Amendment rights when taking his firearms "without legal excuse or justification and without due process of law." (Second Am. Compl. ¶¶ 155–165.) "[T]o state a claim under §1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed or caused by a person amenable to suit under §1983 and acting under color of state law." *Laniado*, 2018 WL 6171820, at *6. In other words, to be liable under §1983, "a defendant must be a person." *Id*. "A State, or an official acting in his or her official capacity for the State, is not a person within the meaning of §1983." *Id*. Furthermore, it is well established that §1983 does not override Eleventh Amendment immunity. *Davis*, 2005 WL 1863665, at *3; *Quern*, 440 U.S. at 342. Neither the County nor the OCPO are "persons" and the OCPO is protected by Eleventh Amendment immunity. Thus, the aspects of the County Motion and OCPO Motion seeking dismissal of count eight will be granted.

### C.  Count 17

In connection to count eight, plaintiff alleges in count 17 that the County, as the OCPO's employer, "maintained a policy, custom and/or practice of deliberate indifference to violations by his employees of the constitutional rights to due process and the right to bear arms and the right to the guarantees

15

and privileges of the laws of the United States of America and the state of New Jersey with regard to returning [p]laintiff's firearms after a court has dismissed and expunged [p]laintiff's record." (Second Am. Compl. ¶ 240.) Plaintiff argues that the County, "through its policymakers[,] knowingly and intentionally" violated his and the public's constitutional rights "or [was] deliberately indifferent[] to implement policies, procedures, customs and practices" that did the same. (Second Am. Compl. ¶ 241.) Pursuant to *Monell v. New York City Department of Social Services*, 46 U.S. 658 (1978), a municipality can be held liable for alleged constitutional transgressions involving the implementation or execution of "a policy, regulation[,] or decision officially adopted by the governing body or informally adopted by custom." *Landi*, 2009 WL 606141, at *5 (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir.1996)). Liability is, however, "restricted … to those instances where the municipality's custom or policy adversely affected the constitutional rights of the plaintiff." *Id.*

Plaintiff is attempting to hold the County liable for the OCPCO's conduct. The County, however, exercised no policy that regulated the OCPO. *See supra* pp. 9–12. "In fact, New Jersey law forecloses [the County] from exercising any authority over [the] OCPO with respect to law enforcement functions." *Landi*, 2009 WL 606141, at *5. Thus, this count will be dismissed.

### D. Count 19

In count 19, plaintiff alleges that the County "intentional[ly], deliberately indifferent[ly], careless[ly], reckless[ly], and/or negligent[ly] fail[ed] to adequately hire, train, supervise, and discipline its agents, servants and or/employees." (Second Am. Compl. ¶ 249.) While plaintiff argues that the OCPO was acting as the County's agent, servant, and employee when exercising custody over plaintiff's firearms, I find otherwise. *See supra* pp. 9–12.

Accordingly, the County cannot be vicariously liable for the OCPO. *Davis*, 2005 WL 1863665, at *4

## V. CONCLUSION

For the reasons stated above, the Rule 12(b) aspects of the County Motion and OCPO Motion are **GRANTED**. While I recognize that the dismissal of a claim with prejudice is a harsh remedy, granting leave to amend is not necessary if an "amendment would be inequitable or futile." *New York v. Hill*, 528 U.S. 110, 118 (2000); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 106 (3d Cir. 2002). Given that plaintiff has already had the opportunity to amend its claims against the County (*see* ECF Nos. 1, 33, Second Am. Compl.) and because the County is not the real party-in-interest, I find that any further amendment would be futile. The claims against the County will thus be dismissed with prejudice. Meanwhile, because the OCPO is protected by Eleventh Amendment immunity, the claims asserted against it will be dismissed for lack of subject matter jurisdiction. *See Aldossari on Behalf of Aldossari v. Ripp*, 49 F.4th 236 (3d Cir. 2022) (noting that because a court lacking subject matter jurisdiction cannot decide the case on its merits, dismissal for lack of subject matter jurisdiction "must be without prejudice"); *Merritts v. Richards*, 62 F.4th 764, 772 n.4 (3d Cir. 2023) (noting that "a dismissal with prejudice on a threshold ground [such as lack of subject-matter jurisdiction] should ordinarily be vacated and remanded with instructions for the claim to be dismissed without prejudice").

                                              */s/ Edward S. Kiel*
                                              **EDWARD S. KIEL**
                                              **UNITED STATES DISTRICT JUDGE**

Dated: February 28, 2025